UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CAUSE NO. 1:20-CR-00055-TH |
| | § | |
| | § | |
| JAKE ELLIS DAUGHTRY (1) | § | |
| | § | |

**MOTION TO WITHDRAW GUILTY PLEA**

TO THE HONORABLE JUDGE:

Jake Ellis Daughtry moves the Court to enter an order allowing him to withdraw his plea of guilty entered January 18, 2022.

**INTRODUCTION**

Jake Daughtry is the owner of Right Price Chemicals ("RPC"), a legitimate small business in Nederland, Texas that lawfully sold chemicals, laboratory and safety supplies as an online retailer. The company sold to a variety of customers over the years including the Transportation Security Administration ("TSA"), NYU School of Medicine, and SpaceX. Many major retailers, such as Amazon, Walmart, and eBay were selling and fulfilling orders for 1,4 butanediol in the same manner as RPC. Exhibits 1-3. 1,4 butanediol is a legal, non-regulated chemical that is used in several consumer products including spandex and as an industrial solvent. This chemical is commonly used as a wheel cleaner, floor cleaner, and to clean circuit boards, among other consumer applications. To put it into perspective, Acetone, a common fingernail polish remover is a hazardous chemical for purposes of transport and is a List II chemical whereas 1,4 butanediol is not a hazardous chemical and is not on any Schedule of Controlled Substances and is not a listed chemical.

1

Sometime in 2018, RPC employees began receiving notice of UPS lost packages and shipping exceptions being reported from Florida customers that RPC deliveries were not arriving as expected. The employees made a list of the orders that were subject to the shipping exceptions, which included products other than 1,4 butanediol. Daughtry was able to track the issues down to only two UPS hubs out of Fort Lauderdale and Hialeah. Once RPC determined the issue was limited to these two hubs, RPC stopped shipping to Florida temporarily for all products. Daughtry reached out to his UPS representatives to understand and resolve any shipping issues. UPS's initial response was that the packages were likely lost/damaged in transit and a claim form would need to be filed for reimbursement.

Daughtry received a phone call from Natasha King claiming to be with the Sheriff's office in Broward County, Florida, stating RPC needed to stop shipping GBL/GHB to customers in Florida. Natasha King referred to comments she claimed were from "poison control" where they had referred to the substance as the "concentrated form of GHB". Jake Daughtry explained that GHB and GBL are not items that RPC purchases or sells. Daughtry requested attorney JT Thomas look into the matter; he was unable to get any answers from Florida. A week or two later, Jake Daughtry consulted attorney Tom Kelley at The Gertz Law Firm to investigate the issue further and provide legal advice to RPC.

Jake Daughtry also called DEA Beaumont to conduct further due diligence. DI Baker stated she had never heard of 1,4 butanediol but that she would do her due diligence by finding out and calling them back. Not only did this agent never call

Daughtry back, she wrote a DEA 6 Report falsely stating the Daughtry's are "Shipping GBL to end users in Florida."

The false statements related to claims RPC was illegally distributing GBL carry their way into the report written by SA Karen Berra on March 1, 2018 which falsely claims "Company illegally distributing GBL domestically." The repeated and intentional misidentifications of 1,4 butanediol as "GBL" ultimately resulted in a criminal investigation that should have never been initiated.

Daughtry and his attorney were in contact with the DEA and forthcoming with information. In 2019 Daughtry received a subpoena from a DEA agent in Arizona related to 1,4 Butanediol. Daughtry responded to the subpoena and had his attorney reach out to the agent. Daughtry was told by Attorney Kelley neither RPC nor Jake Daughtry were the target of any DEA investigation.

On July 15, 2020, without any notice from the Government, a raid was conducted where property was seized subject to forfeiture as a result of the false accusations made by the DEA. The legal authorities in this area make it indisputable that the actions of RPC and Jake Daughtry were not a crime. The Indictment, Superseding Indictment, and Information all fail as void because they lack the necessary *mens rea*, as defined by the United States Supreme Court in *Ruan*, since Jake Daughtry's guilty plea.

Defendant's Motion to Withdraw his Guilty Plea should be granted for the following reasons:

- Daughtry's elderly parents were used by the prosecutor to coerce his guilty plea
- The entry of a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense

- 21 USC § 841(g)(3) is a condition precedent to implementation and enforcement of § 841 as to 1,4 butanediol and the Attorney General has never promulgated the necessary regulations
- The Information is void, in part, because the Defendant did not receive fair notice of what activity he allegedly engaged in to support the underlying offense
- GHB is not a Schedule I controlled substance listed by Congress; Exhibit 4 - 21 USC § 812
- 1,4 Butanediol is not a controlled substance analogue of GHB by definition; Exhibit 5 - 21 USC § 802 (32)(A)
- Congress added 841(g) as a penalty enhancement and not an unlawful act of 21 USC § 841(a); Exhibit 6 - Adam Walsh Act
- This case was and continues to be stained with fabrications and malicious misconduct
  - The government provided and relied upon fabricated evidence to obtain Jake Daughtry's guilty plea
  - Since the plea, there is new information and proof of the government deliberately tampering with documents

This wrongful prosecution only continued due to the various strains of misconduct of Government agents, contractors and prosecutors, which have fused together in such an egregious manner that Court intervention is required to prevent a miscarriage of justice.

**Ultimately, the government's case fails as void for failure to charge the necessary elements of a crime.** The Supreme Court has long recognized that a guilty plea is only an admission of factual guilt, *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (per curiam), and consistently held that guilty pleas are not absolute and may be appealed based on claims of actual innocence. See id. at 61; *Blackledge v. Perry*, 417 U.S. 21 (1974); *Bousley v. United States*, 523 U.S. 614 (1998); *Class v. United States*, 138 S. Ct. 798, 804 (2018). Because a guilty plea reflects an admission only of factual guilt, a defendant's challenge to the applicability of the convicting statute to those admitted facts is a claim of actual innocence that cannot be waived.

## PROCEDURAL BACKGROUND

On June 3, 2020, the Eastern District of Texas returned a 24-count Indictment against the Defendant alleging violations of 21 USC § 846 and 841, 21 USC §§ 802(32)(A), 813, and 841(a)(1) and(b)(1)(C), and 18 USC § 2, 21 USC § 841(g), 21 USC §§ 841(g)(1)(B) and (g)(2)(A)(i), 21 USC § 856(a)(1), 21 USC § 1957; the indictment also sought forfeiture of certain real property and personal property in the form of a money judgment pursuant to 21 USC §§ 853 and 881.

On July 17, 2020, the defendant appeared for arraignment before Magistrate Judge Zack Hawthorn and entered a plea of "not guilty".

On January 18, 2022 the Government shifted the prosecution to a strict liability offense by filing an Information alleging only one count under 21 USC §§ 846 and 841. Conspiracy to possess with intent to distribute and distribution of a date rape drug over the internet to an unauthorized purchaser.

The Court has accepted the Defendant's plea but has not yet accepted the plea agreement. [Dkt 392] Sentencing has not yet occurred.

## LEGAL AUTHORITIES AND ARGUMENT

Rule 11(d)(2)(b) allows a defendant to withdraw a plea of guilty after the Court accepts the plea, but before it imposes sentencing if the Defendant can show a fair and just reason for requesting the withdrawal.

***Carr* Factors**

This rule should be "construed and applied liberally." *United States v. Benavides*, 793 F.2d 612, 616 (5th Cir. 1986). District courts have broad discretion to allow a defendant to withdraw his plea of guilty under Federal Rule of Criminal Procedure 11(d). *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). The following factors should be considered when deciding whether to allow a defendant to withdraw his plea of guilty:

(1)    whether the defendant asserted his innocence;
(2)    whether the Government would suffer prejudice if the withdrawal motion were granted;
(3)    whether the defendant delayed filing his withdrawal motion;
(4)    whether the withdrawal would substantially inconvenience the court;
(5)    whether close assistance of counsel was available;
(6)    whether the original plea was knowing and voluntary; and
(7)    whether the withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).

**Totality of the Circumstances Analysis Appropriate for Plea Withdrawal**

Courts should also look at the reasons why later advanced defenses were not proffered at the time of the original plea, or the reasons why a defendant delayed in making his withdrawal motion. *Id* 343–44 (5th Cir. 1984). In applying these factors, the Court should consider the totality of the circumstances. *Id.* at 344.

In *United States v. Ribas-Dominicci*, the Court reviewed whether to permit a defendant to withdraw a guilty plea, prior to sentencing, and reasoned that Rule 32(d) directs the court to grant the motion if there is a showing of a fair and just reason. The Court was persuaded one such reason would be a showing that there was a core violation

of Rule 11. A core violation would include an improper description of the *mens rea* of the offense. The court had instructed the defendant that he could be found guilty of the theft offense only if he acted willfully - that is:

> This was an inaccurate statement of the willfulness requirement of the theft offense. See *Morissette v. United States*, 342 U.S. 246 (1952). Consequently, when the defendant moved to withdraw the plea prior to sentencing the trial court erred in denying the motion." *Ribas-Dominicci,* 50 F.3d 76 (1st Cir. 1995).

### RUAN DECIDED BY UNITED STATES SUPREME COURT UNANIMOUSLY ON JUNE 27, 2022

This language parallels the language the United States Supreme Court recently looked to in *Ruan* where they reviewed the the required *mens rea* that applies to § 841:

> "First, as a general matter, our criminal law seeks to punish the " 'vicious will.' " *Morissette v. United States*, 342 U. S. 246, 251 (1952); see also id., at 250, n. 4 (quoting F. Sayre, Cases on Criminal Law, p. xxxvi (R. Pound ed. 1927)). With few exceptions, " 'wrongdoing must be conscious to be criminal.' " *Elonis v. United States*, 575 U.S. 723, 734 (2015) (quoting Morissette, 342 U. S., at 252). Indeed, we have said that consciousness of wrongdoing is a principle "as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Id., at 250.
>
> Consequently, when we interpret criminal statutes, we normally "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state." *Rehaif v. United States*, 588 U. S. ___, ___ (2019) (slip op., at 3). We have referred to this culpable mental state as "scienter," which means the degree of knowledge necessary to make a person criminally responsible for his or her acts. See ibid.; Black's Law Dictionary 1613 (11th ed. 2019); *Morissette*, 342 U. S., at 250–252.
>
> Applying the presumption of scienter, we have read into criminal statutes that are "silent on the required mental state"—meaning statutes that contain no mens rea provision whatsoever—" 'that mens rea which is necessary to separate wrongful conduct from "otherwise innocent conduct." ' " *Elonis*, 575 U. S., at 736 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000); emphasis added). Unsurprisingly, given the meaning of scienter, the mens rea we have read into such statutes is often that of knowledge or intent. See, e.g., *Staples v. United States*, 511 U.S.

600, 619 (1994); *United States v. United States Gypsum Co.*, 438 U.S. 422, 444–446 (1978).

And when a statute is not silent as to mens rea but instead "includes a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. *Rehaif*, 588 U. S., at ____ (slip op., at 3) (emphasis added). We have accordingly held that a word such as "knowingly" modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts." Id., at ____ (slip op., at 6); see, e.g., ibid.; *United States v. X-Citement Video*, Inc., 513 U.S. 64, 72 (1994); *Liparota v. United States*, 471 U.S. 419, 426 (1985).

Section 841 contains a general scienter provision—"knowingly or intentionally." And in §841 prosecutions, a lack of authorization is what separates wrongfulness from innocence. *Ruan* at 6.

The *Ruan* Court *unanimously* found it important that the scienter requirement helped diminish the risk of overdeterrence by "punishing acceptable beneficial conduct that lies close to, but on the permissible side, of the criminal line." Id.

An act is done willfully if done with a bad or evil purpose to do what the law forbids. *United States v. Mann*, 517 F.2d 259 (5th cir. 1979). A willful act is *not* something which is accidental, careless or negligent. Id. at 268. "A defendant's conduct is not willful if it was the result of a good faith understanding that he was acting within the requirements of the law." *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir. 1997). A defendant is under no burden to prove his good faith rather, the prosecution must prove bad faith beyond a reasonable doubt. *Ruan v. United States*, 597 U.S. _____ (2022).

*Ruan* adopts Judge Roberts' concurring position in *McFadden* giving clarity to the law that did not exist at the time of Jake Daughtry's plea:

As the Court points out, the word "knowingly" applies "not just to the statute's verbs, but also to the object of those verbs—'a controlled substance.' " *Ante,* at 2304 (emphasis deleted). That suggests that a defendant needs to know more than the identity of the substance; he

> needs to know that the substance is *controlled*. See, *e.g.,United States v. Howard,*773 F.3d 519, 526 (C.A.4 2014); *United States v. Washington,*596 F.3d 926, 944 (C.A.8 2010); *United States v. Rogers,*387 F.3d 925, 935 (C.A.7 2004). *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015)

As Justice Roberts previewed in *McFadden*:

> "knowledge of the substance's identity suffices because "ignorance of the law is typically no defense to criminal prosecution." Ante, at 2304. I agree that is "typically" true. But when "there is a legal element in the definition of the offense," a person's lack of knowledge regarding that legal element *can* be a defense. *Liparota v. United States*, 471 U.S. 419, 425, n. 9, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).

> Jake Daughtry was faced with that exact circumstance Justice Roberts described.

The lawyers he consulted, the experts he relied on such as the Chemist he contracted, Silver Fern, the industry, the DEA, and the Attorney General all failed to provide any explanation that would lead him to believe he was operating in violation of any law or regulation. Justice Roberts specifically left open that he might bring this discussion back up in the future:

> "The analogy the Court drew in *Liparota* was to a charge of receipt of stolen property: It is no defense that the defendant did not know such receipt was illegal, but it is a defense that he did not know the property was stolen. Here, the argument goes, it is no defense that a defendant did not know it was illegal to possess a controlled substance, but **it is a defense that he did not know the substance was controlled**.

> Ultimately, the Court's statements on this issue are not necessary to its conclusion that the District Court's jury instructions "did not fully convey the mental state required by the Analogue Act." Ante, at 2307. Those statements should therefore not be regarded as controlling if the issue arises in a future case." (emphasis added)

*Ruan* presents this Court with the opportunity to clarify to the Government that it always has the burden of proof as to the requisite level of intent all the way through the offense down to the point of proving that Jake Daughtry knew 1,4 butanediol was

controlled. *Ruan* makes it clear the Government cannot shift its burden of proof onto Jake Daughtry in order to coerce a guilty plea. Now that the United States Supreme Court has provided clarity after his plea, Jake Daughtry should have the benefit of that information associated with his plea decision.

## CONSPIRACY

"To obtain a conviction under section 846 [21 USC § 846], the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Blakeney,* 942 F.2d 1001, 1009 (6th Cir. 1991) (citations omitted). Id at 177.

### 1. THE DEFENDANT ASSERTED HIS INNOCENCE

Jake Daughtry is actually innocent of the allegations. The Government misrepresented its trial burden in order to obtain a guilty plea despite the Defendant's innocence. Through the course of the criminal prosecution, Jake Daughtry maintained his innocence in the face of the Government's attempts to use fabricated evidence and shifting legal theories.

The Government has changed the path of its prosecution multiple times. Exhibits 22-24. In the final rendition before the plea the Government resorted to a self-serving legal fiction where they would not have to prove the required *mens rea*. They created a fictitious strict liability offense with respect to 1,4 butanediol that defies logic and flies in the face of the products' many known consumer applications as well as the chemical industry's recommendation to avoid regulation of 1,4 butanediol. The requirement of "fundamental fairness" is a core value "embodied in the Due Process Clause of the

Fourteenth Amendment." *In Re Winship, 397 U.S. 358, 369(1970)(Harlan J., concurring)*. As a fundamental right, "[t]he Notice Clause of the Sixth Amendment, as protected by Fed.R.Crim.P. 7(c), guarantees a criminal defendant the right to be informed of the charges brought against him" *U.S. v. Superior Growers Supply Inc.*, 982 F.2d 173 (6th Cir. 1992). Notice of specific wrongdoing is even more important when the conduct is free commerce. *United States v. Falcone*, 311 U.S. 205. The prosecutor(s) self-serving and inconsistent legal theories concerning the same alleged conduct has continuously deprived the defendant of "fundamental fairness." and constitute prosecutorial misconduct.

With complete disregard to fundamental fairness, the Government attempted through a Motion in Limine to completely abandon the fabricated documents. Once fabricated documents were introduced by the Government during the prosecution, it became impossible for anyone to know if the documents received in Discovery were fabricated and every party risked offering fabricated evidence. The Government's discovery abuses and document dump tactics served no other purpose except to force a plea under improper circumstances. [Dkt. 203].

## 2. GOVERNMENT WOULD NOT SUFFER PREJUDICE

The Government will not be prejudiced by the withdrawal of Jake Daughtry's guilty plea. He has suffered actual and irreversible prejudice as a result of the misconduct of the government and its prosecutors. The duties of a prosecutor include being a "servant of the law", "not at liberty to strike foul blows". *United States v. Bowen*, 799 F.3d 336 (5th Cir. 2015). The prosecutors herein have completely disregarded the mandates of due process regarding their prosecutorial duties. They have been interested

in anything but justice, betraying their duty as a servant of the law, and delivering blows with a foul stench of malfeasance and intentional derogation of the law of due process.

The Prosecutors have acted in bad faith knowingly providing the Defendant, the Court, and at least one Magistrate Judge with false statements of fact in order to establish probable cause. Exhibit 8-*19*. For example, SA Berra falsely swore under oath "BDO has no consumer (non-industrial) application and is not readily marketed to the public." See paragraph 11 of Berra affidavit in Cause No. 1:20-MJ-127(the same affidavit was attached to 8 of the 11 warrants).

Despite the Government's perpetual misconduct, numerous constitutional violations, and prior discovery abuses including *Brady* and *Miranda* violations resulting in the removal of the original prosecutor, the Government's misconduct has persisted seamlessly at the behest of the newly assigned prosecutor(s). The Government provided and relied upon fabricated evidence in order to obtain Jake Daughtry's guilty plea. [Dkt 258-1]. Deliberate and intentional violations such as this have an extremely powerful impact on individuals entitled to Due Process and a cancerous effect on the administration of justice.

Many courts have found that the fabrication of evidence necessarily creates prejudice towards the other party in the context of civil litigation. Notably, the *Garcia* court reasoned that:

> **"The actual prejudice to the defendants is overwhelming. They have been required to defend a lawsuit based on false evidence. Nothing can be relied on as authentic** – from the [government's] expert reports; to evidence offered in support of [his] interrogatory answers; to the evidence offered to the court. The defendants have been put to enormous additional effort and expense to ferret out the [government's] lies and to double check every piece of

information and evidence. I have absolutely no confidence that the [government] would not attempt to offer additional false evidence at a trial. The risk that this court might issue judgment against the defendants based on the [government's] fabrications and lies is simply too great to allow the case to proceed." *Garcia v. Berkshire Life Insurance Company of America*, Civil No. 04-cv-01619-LTB-BNB (D. Colo. Nov. 28, 2007).(emphasis added)

In the context of civil litigation, the Fifth Circuit has held that a victim of intentional fabrication of evidence by officials is denied due process when he is either convicted or acquitted. *Cole v. Carson*, 802 F.3d 752, 768 (5th Cir. 2015). In *Cole*, the Fifth Circuit recognized deliberate fabrication of evidence by police may create a Fourteenth Amendment claim if such a claim may not be pursued under the Fourth Amendment. *Cole* provides affirmation that the Fifth Circuit recognizes due process requires the avoidance of fabricated evidence and that it is an independent right apart from the other protections specified in the Bill of Rights. This Constitutional protection is undeniably due to any innocent defendant being accused and forced to defend against fabricated evidence used during a criminal prosecution.

The Fourth Circuit has held that you can withdraw a plea when it is procured by fraud:

This . . . is not a case where Defendant sought to withdraw his plea "merely because he discover[ed] long after the plea ha[d] been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." Rather, **Defendant's misapprehension stems from an affirmative government misrepresentation that "strikes at the integrity of the prosecution as a whole."** *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013).

Ultimately, the court of appeals found Mr. Fisher's plea was simply too compromised to stand in a totality of the circumstances analysis. Id. The same is true of Mr. Daughtry's plea.

### 3. The Defendant did not Delay Filing His Withdrawal Motion

Jake Daughtry has filed this motion before sentencing and before this Court has accepted the plea agreement. [Dkt 392] This Motion is also based on the discovery of new information since the plea.

Further, Jake Daughtry has filed this Motion after the decision in *Ruan* which materially alters the nature of his plea and Information that would be proper in this cause. An indictment or information's failure to charge an offense constitutes a jurisdictional defect. Because an indictment is jurisdictional, defendants at any time may raise an objection to the indictment based on failure to charge an offense, and the defect is "not waived by a guilty plea." *Morales-Rosales*, 838 F.2d at 1361-62; *see also* Fed.R.Crim.P. 12(b)(2). *U.S. v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999).

### Jake Daughtry has Discovered More Fabricated Evidence and Discovery Abuses Since His Plea

After being forced to abandon Silver Fern's fictitious standard-of-care because it was fabricated, the Government continues its efforts to fabricate a standard-of-care through another company. Since the entry of his guilty plea, Jake Daughtry has discovered new information that will likely lead to admissible evidence of an end-user form that the Government created by mimicking one from another company that RPC never ordered 1,4 butanediol from. The Government is not permitted and this Court should not allow the use of fabricated evidence in order to induce a plea.

Just last week, Jake Daughtry learned the Government intends to use Silver Fern documents against him in Sentencing despite prior assurances they had abandoned the

fabrications. This indicates the prosecution does not intend to change their course and that the strategy remains, win at all cost.

The discovery abuses are so numerous that they were not all discovered by the time of the plea. In communications from June of 2022, since the plea, Jake Daughtry learned that an employee exercised their right to counsel and requested to see the warrant at the scene of the raid on July 15, 2020. He also learned that this employee's right to counsel was violated and that this employee did not waive the right to an attorney in writing. The employee confirmed that an agent instructed that they had to sign a document to keep their right to an attorney in place. The document was actually a waiver of this employee's rights. When this employee learned they had been lied to by the Government, the waiver was torn up. However, Mr. Daughtry was provided with the employees' signed, fully intact waiver in discovery. Exhibit 20 - Tampered Waiver of Employee. After careful inspection of the document, it is evident, once again, the Government has tampered with the form by meticulously lining up the letters, almost perfectly, and piecing it back together, making it appear to Jake Daughtry it had never been torn and that the employee had waived their Fifth and Sixth Amendment right. The officer's report from this incident has still not been disclosed to Daughtry, resulting in another new *Brady* violation.

The trial exhibits reviewed after the plea with new counsel also contained a number of undisclosed FinCen documents. Daughtry has been unable to conduct any investigation as to the veracity or credibility of the information in the Exhibit because he did not receive it in discovery. Upon reviewing the trial exhibits after the plea with his new counsel, Jake Daughtry discovered that the Government has gone back and added

sales records from February of 2014 in order to arrive at the claimed amount of more than $775,906.80[1]. Proposed Trial Exhibit 54 was never produced in discovery and represents the first time the Government sought to include February 2014 in the sales involved in the calculation.

**MAGNET FORENSICS**

On July 21, 2022 Jake Daughtry discovered that the Government used a computer forensic tool from Magnet Forensics on Jake Daughtry's computer called Magnet RAM Capture which is information intentionally concealed by the Government. Before July 21, 2022, Jake Daughtry had only been told that FTK Viewer and Cellebrite had been used by the Government on any devices in this case. The Magnet Forensics suite of digital evidence tools, if used properly, would have provided Jake Daughtry with digital evidence and chain of custody, giving vital information and history of the fabricated evidence. Magnet's RAM Capture, used on Jake Daughtry's computer, has the following capture capabilities: "RAM includes processes and programs running on the system, network connections, evidence of malware intrusion, registry hives, usernames and passwords, decrypted files and keys, and evidence of activity not typically stored on the local hard disk." Exhibit 27.

If the Government used the Magnet Forensics tools appropriately, the Government should have had access to this information, should know who committed the fabrications, and they have deliberately concealed this information from the innocent Defendant so that he would be restricted from information that proves his

---

[1] The Government has made numerous claims about the amount of 1,4 butanediol sales that are in conflict with one another.

innocence. The new evidence shows the extent to which the Government had access to this information since at least July 15, 2020 through a forensic program that they used on the Defendant's computer but never disclosed. This tool also provided the Government with unfettered access to every attorney-client privileged communication that had occurred on Jake Daughtry's computer even after the email warrant had been executed in 2018. On August 1, 2022 Jake Daughtry received a report from a forensic analyst that the computer that had been mishandled resulting in the loss of exonerating computer data. Exhibit 26.

The information withheld was undeniably material to Jake Daughtry's defense causing him to enter a guilty plea without knowing the full extent to which the Government fabricated evidence in violation of his due process rights. These deliberate, malicious, and continuous omissions of material evidence by the Government will continue without intervention by this Court.

### Jake Daughtry's Actions Do not Constitute a Crime Under The Recent Ruan Decision from the United States Supreme Court

Congress made clear to specifically address 1,4 Butanediol independently in 21 USC § 841(g)(3), requiring the Attorney General to promulgate regulations by persons handling 1,4-butanediol **in order to** implement and enforce the provisions of this section, which has never been done.

> **(3)** The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4–butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

Acting in bad faith, the Government's probable cause affidavits intentionally and maliciously omit 841(g)(3) entirely from its presentation in order to deceive the Court. If they had included this vital and required provision it would have been apparent to the reviewing Judge that the Attorney General has not promulgated regulations related to record-keeping for 1,4 butanediol. Further, Berra falsely claims the sale of 1,4 butanediol is specifically banned under 21 USC § 841 (g)(2)(A)(i). Here is the presentation made by Berra to the Court:

60.     The sale of BDO to consumers via the internet is specifically banned under 21 U.S.C. § 841 (g)(2)(A)(i). This section of Title 21 states that "whoever knowingly uses the Internet to distribute a date rape drug, knowing or with reasonable cause to believe that (A) the drug would be used in the commission of criminal sexual conduct; or (B) the person is not an authorized purchaser…" The section defines a date rape drug as gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma butyrolactone (GBL) or 1,4–butanediol.

61.     This section defines an "authorized purchaser" as

   a.     person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least one (1) medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The preceding sentence shall not be construed to imply that a medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice; or any practitioner or other registrant who is otherwise authorized by their registration to dispense, procure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter;

26

   OR

   b.     A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a prescription is not required.

As established through the undercover operations and customer interviews, RIGHT PRICE CHEMICALS  sells BDO via the internet to persons who are not "authorized purchasers" nor the

The charge involves the entirety of 21 USC § 841 and the Government has the burden of proof on each essential element. The conduct of the Government here in obtaining a warrant beyond the power of the issuing judicial officer meets the criteria of deliberateness and culpability reiterated in *Herring*. *Herring v. United States*, 555 U.S. 135 (2009).

The prosecution has treated constitutional and statutory limits as an inconvenience, and jurisdictional limits as irrelevant. Violations of a jurisdictional limitation are never harmless. See *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3 (1988). At minimum, the omission of any consideration for 841(g)(3) deprived Jake Daughtry of fair notice of the alleged crime.The statutory text omitted is significant enough to deprive this Court of subject matter jurisdiction to act with respect to the charge because the language specifies a condition precedent to implementation and enforcement. Jake Daughtry's "objection that the indictment fails to charge an offense is not waived by a guilty plea. The violation of [Daughtry]'s right to be free of prosecution for a nonoffense would bar his conviction even if his "factual guilt" had been established validly." *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980). The entry of a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense. Id.

A basic canon of statutory construction is that words should be interpreted as taking their ordinary and plain meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1980). We must assume that Congress used the words of the statute as they are commonly and ordinarily understood. *United States v. Porter*, 591 F.2d 1048, 1053 (5th Cir. 1979). A statute should ordinarily be interpreted according to

its plain language, unless a clear contrary legislative intention is shown. *United States v. Apfelbaum*,445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). *Quarles v. St. Clair*, 711 F.2d 691, 699 n.21 (5th Cir. 1983). Here, the words "in order to" must be given their plain meaning as a prerequisite to implementation and enforcement.

The Government intentionally sought to replace the Attorney General's failure to promulgate regulations through an unlawful delegation of authority. Congress did not authorize the DEA to promulgate regulations related to 1,4 Butanediol and it did not authorize Silver Fern to do so. *Ruan* tells us that the proper evaluation of this issue is not a prosecution driven standard of what amounts to "objectively," "reasonable," or "honest effort." *Ruan* at 13. Under, *Ruan*, Jake Daughtry is not required to conform his actions to a hypothetical industry standard of care or to what someone might view as reasonable. The Government can point to no regulation having the force and effect of law that makes Jake Daughtry's conduct a crime:

```
02:50PM   15   Q.     So, again, you can't point the Court to a specific
          16   regulation that has the force of law that makes them do
          17   this, correct?
          18   A.     I cannot, sir.
```

Exhibit 21 - Testimony of Mr. Salameh - Preliminary Injunction Hearing-1:20-CV-305 Dkt 47 at p. 128 l 15-18.

In order for a drug or other substance to be listed in Schedule I, 21 USC § 812 (b)(1)(B) requires findings that the "drug or other substance has no currently accepted medical use in treatment in the United States." Once GHB was approved as a drug with a medical use by the FDA, the required findings became impossible. The prescription

drug Xyrem is the sodium salt of gamma-hydroxybutyrate (GHB). Exhibit 25 This is another nullification of the Government's analogue argument.

Contrary to multiple claims by the DOJ and the DEA, Congress did not permanently add GHB to the list of schedule I controlled substances. See 21 USC § 812 - Schedule I. Exhibit 4. Congress specified, GHB was subject only to "**EMERGENCY SCHEDULING**" in 2000 which lasts only three years, if the temporary scheduling is extended. (emphasis added)

> "SEC. 3. EMERGENCY SCHEDULING OF GAMMA HY-
> DROXYBUTYRIC ACID AND LISTING OF GAMMA
> BUTYROLACTONE AS LIST I CHEMICAL.
> "(a) EMERGENCY SCHEDULING OF GHB.—
> "(1) IN GENERAL.—The Congress finds that the abuse
> of illicit gamma hydroxybutyric acid is an imminent
> hazard to the public safety. Accordingly, the Attor-
> ney General, notwithstanding sections 201(a), 201(b),
> 201(c), and 202 of the Controlled Substances Act [21
> U.S.C. 811(a)–(c), 812], shall issue, not later than 60
> days after the date of the enactment of this Act [Feb.
> 18, 2000], a final order that schedules such drug (to-
> gether with its salts, isomers, and salts of isomers) in
> the same schedule under section 202(c) of the Con-
> trolled Substances Act as would apply to a scheduling
> of a substance by the Attorney General under section
> 201(h)(1) of such Act (relating to imminent hazards to
> the public safety), except as follows:

21 USC § 811(h)(1)-(2):

**(h) Temporary scheduling to avoid imminent hazards to public safety**

**(1)** If the Attorney General finds that the scheduling of a substance in schedule I on a temporary basis is necessary to avoid an imminent hazard to the public safety, he may, by order and without regard to the requirements of subsection (b) relating to the Secretary of Health and Human Services, schedule such substance in schedule I if the substance is not listed in any other schedule in section 812 of this title or if no exemption or approval is in effect for the substance under section 505 of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 355]. Such an order may not be issued before the expiration of thirty days from—

> **(A)** the date of the publication by the Attorney General of a notice in the Federal Register of the intention to issue such order and the grounds upon which such order is to be issued, and

> **(B)** the date the Attorney General has transmitted the notice required by paragraph (4).

**(2)** The scheduling of a substance under this subsection shall expire at the end of 2 years from the date of the issuance of the order scheduling such substance, except that the Attorney General may, during the pendency of proceedings under subsection (a)(1) with respect to the substance, extend the temporary scheduling for up to 1 year.

GHB is not a schedule I substance for at least two reasons: (1) GHB has a medically accepted use which makes the findings required to list the substance on Schedule I impossible; (2) GHB was subject only to emergency scheduling in 2000 and that temporary scheduling has expired. Therefore, 1,4 butanediol cannot be a controlled substance analogue of GHB by definition pursuant to 21 USC § 802(32)(A).

## 4. The Withdrawal Will Not Substantially Inconvenience the Court

The invalid plea should be addressed now or the Court risks that additional judicial resources will be needed aside from a trial.

This Court has not yet conducted sentencing and at this stage it would not substantially inconvenience the Court to dismiss the faulty indictment in the interest of justice.

To prevent a miscarriage of justice, the Court should take the action necessary to right the scales of justice. Since the *Ruan* decision, it is clear that Jake Daughtry's plea is

not a valid plea and that, when challenged, his plea would likely be reversed on appeal which would increase the length of the criminal litigation.

**5. WHETHER CLOSE ASSISTANCE OF COUNSEL WAS AVAILABLE**

Daughtry was represented by Dustin Galmor at the time of his plea. Daughtry should be permitted to file and obtain a ruling before trial on a Motion to Suppress, Motion to Compel Disclosure, and Motion to Dismiss the Indictment or Information.

**6. THE ORIGINAL PLEA WAS NOT KNOWING OR VOLUNTARY**

Jake Daughtry maintains his innocence, however, the Government eventually placed him under extreme duress. This Motion is filed, in part, because the circumstances that caused Jake Daughtry to Plea were unconscionable in that the Government sought prosecution of his elderly parents and offered them dismissals and agreed to return all of the unlawfully seized property if he would enter a plea of guilty. The Government's threat that Jake's elderly parents would die in prison if he chose to proceed to trial, albeit immoral and unethical, proved to be powerful nonetheless.

On June 27, 2022, after the guilty plea, the United States Supreme Court reined in overzealous prosecutors who arrested doctors for failing to conform to unwritten regulatory standards lacking the force and effect of law. The Supreme Court held in *Ruan v. United States*, that the "knowingly" or "intentionally" *mens rea* applies to authorization and that the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so for all elements of §841. *Ruan v. United States*, 597 U.S. _____ (2022). The *mens rea* requirement rules out ex post facto laws, because if an act was legal when it took place,

the actor could not have intentionally engaged in illegal conduct. An ex post facto law punishes conduct that was innocent at the time the conduct occurred; that is, it attempts to punish a citizen "for an act, which, when done, was in violation of no existing law." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 388, 1 L.Ed. 648, 649 (1798). This is important in the context of the Government's argument that a shifting standard of care developed through private actors such as Silver Fern might create a standard for criminal conduct. Jake Daughtry could not have entered into a valid plea under Rule 11 to what the United States Supreme Court had to clarify to the Court of Appeals in its *Ruan* decision, when they did so only after his plea. *Ruan v. United States*, 597 U.S. _____ (2022).

7. **WITHDRAWING THE PLEA WILL NOT UNNECESSARILY WASTE JUDICIAL RESOURCES**

Jake Daughtry's withdrawal of his guilty plea will not unnecessarily waste judicial resources or substantially inconvenience the Court, especially given the appearance of justice thus far in the case as a result of such egregious prosecutorial misconduct. "[J]ustice must satisfy the appearance of justice." *Miller v. Sam Hous. State Univ.*, 986 F.3d 880 (5th Cir. 2021) citing *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954).

The Government obtained a plea from Jake Daughtry based partially on the false allegations that deaths resulted from the use of 1,4 butanediol and there is no admissible evidence to support this claim. The Government has still not produced the entire medical or forensic examiner case file. Daughtry should be permitted to have a Daubert hearing after full discovery on the death investigations.

It would be a waste of judicial resources to let constitutional violations prevail and to let the innocent Defendant be convicted which calls into question the integrity of the system.

## CONCLUSION AND PRAYER

Mr Daughtry's plea is invalid and was obtained unlawfully. The Government disregarded the Constitution, the Federal Rules of Criminal Procedure, and well-established Supreme Court precedent. In extraordinary misconduct, the Government presented false evidence on material issues to the Court, Judges, defense counsel and Jake Daughtry in order to win at all costs. Despite these obstacles two significant events happened since the guilty plea: (1) The United States Supreme Court decided *Ruan* clarifying the Government's burden of proof as to the *mens rea* for each element of the alleged offense; and (2) new evidence has been discovered including the Government's use of Magnet Forensics software on his computer and failed to disclose what they did with it.

The misconduct of the Government and its agents in this case has stained the Government and tainted this prosecution to a degree most likely never experienced previously in the Eastern District of Texas. As Judge Sullivan stated at the trial in the wrongful prosecution of the late Senator Ted Stevens, "This is not about prosecution by any means necessary." Moreover "the fair administration of justice does not depend on the luck of the draw or a lucky day or a lucky continuance. Indeed it should not depend on who represents the defendant, whether an FBI agent blows a whistle, a new administration, a new attorney general, or trial team. The fair administration of justice depends on the Government meeting its obligations to pursue convictions fairly and in

accordance with the Constitution." *United States of America v. Theodore F. Stevens*, United States District Court, District of Columbia, 1:08-cr-00231-EGS. The events that led to Mr. Daughtry's plea are a tragedy and should be a warning to everyone that any innocent citizen might feel the pressure to enter a plea if the prosecutors are hellbent on ignoring the Constitution and willing to present false evidence.

For the reasons stated above and in the interest of justice, Jake Daughtry prays that the Court finds that there is a fair and just reason to allow the plea of guilty to be withdrawn. As such, he asks the Court to grant this motion. Jake Daughtry respectfully requests an evidentiary hearing related to this Motion.

Respectfully submitted,

THE MONK LAW FIRM

4875 Parker Drive
Beaumont, Texas 77705
Phone: (409) 724-6665
Fax:  (409) 729-6665
brandon@themonklawfirm.com

By:     */s/ Brandon P. Monk*
_____
BRANDON P. MONK
State Bar No. 24048668

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of August, 2022, I electronically filed Defendant's Motion to Withdraw Guilty Plea with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

By:     */s/ Brandon P. Monk*
_____
BRANDON P. MONK


**CERTIFICATE OF CONFERENCE**

The Government is opposed to this Motion pursuant to conference by telephone between the undersigned and Mr. Christopher Rapp.

By:     */s/ Brandon P. Monk*
_____
BRANDON P. MONK