

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL NO. 1:20-CR-55-TH-ZJH-1 |
| JAKE ELLIS DAUGHTRY | § | |
| | § | |

# REPORT AND RECOMMENDATION DENYING MOTION TO WITHDRAW GUILTY PLEA

This case is assigned to the Honorable Thad Heartfield, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management. Pending before the Court is a *Motion to Withdraw Guilty Plea*, [Clerk's Docket No. 429], filed by Defendant Jake Daughtry ("Daughtry"). Daughtry has failed to establish any of the *Carr* factors in his favor, thus the motion should be denied.

## I. Background

On August 4, 2021, the Grand Jury charged Daughtry in a First Superseding Indictment with conspiracy to possess with the intent to distribute a controlled substance analogue (Count One), conspiracy to possess with the intent to distribute a date rape drug over the internet with reasonable cause to believe the person is not an authorized purchaser for human consumption (Count Two), maintaining a drug-involved premises (Count Three), and money laundering (Counts Five through Nineteen). [Clerk's Docket No. 205]. On January 18, 2022, Daughtry pled guilty pursuant to a plea

agreement to an Information charging him with knowingly using the internet to distribute a date rape drug—1,4 Butanediol—a controlled substance analogue of gamma hydroxybutyric acid (GHB), a Schedule I substance, to the extent used for human consumption knowing or having reason to believe the person is not an authorized purchaser. [Clerk's Docket No. 347]. As part of the plea agreement, the Government agreed to move to dismiss all of the remaining charges. [Clerk's Docket No. 358, ¶9]. Yet seven months later, Daughtry filed his opposed motion to withdraw his guilty plea.[1] [Clerk's Docket No. 429]. On September 8, 2022, the undersigned held a hearing on the *Motion to Withdraw Guilty Plea* and took the pending motion under advisement. [Clerk's Docket No. 467].

## II. Motion to Withdraw Guilty Plea

A defendant has no absolute right to withdraw a guilty plea before the imposition of sentence. *United States v. Landreneau*, 967 F.3d 443, 449 (5th Cir. 2020); *United States v. Lord*, 915 F.3d 1009, 1014 (5th Cir. 2019); *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015); *United States v. Minor*, 714 F.3d 319, 321 (5th Cir. 2013); *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). "Instead, the district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a 'fair and just reason.'" *Landreneau*, 967 F.3d at 449 (quoting *Powell*, 354 F.3d at 370); *see Harrison*, 777 F.3d at 234 (noting that "a defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he 'can show a fair and just reason for requesting the withdrawal.'" (quoting FED. R. CRIM. P. 11(d)(2)(B))); *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009). "The defendant bears the burden of establishing a fair and just reason for withdrawing his plea." *Powell*, 354 F.3d at 370; *accord United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020); *United States v. Lizarraras-Chacon*, 804 F. App'x 292, 293 (5th Cir. 2020); *London*, 568 F.3d at 563; *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998).

---

[1] On September 6, 2022, Daughtry filed his reply brief in support of the motion to withdraw guilty plea. [Clerk's Docket No. 464]. The undersigned will consider both together when referring to the original motion.

To determine whether a defendant has demonstrated a fair and just reason for withdrawing his plea, the court must consider the following factors: (1) whether the defendant has asserted his innocence; (2) whether the Government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984) ("the *Carr* factors"); *see Strother*, 977 F.3d at 443; *Landreneau*, 967 F.3d at 449; *Lord*, 915 F.3d at 1014; *Harrison*, 777 F.3d at 234; *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). "The district court is not required to make findings as to each of the *Carr* factors." *Powell*, 354 F.3d at 370 (citing *Brewster*, 137 F.3d at 858); *see Landreneau*, 967 F.3d at 449; *United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013). "'[N]o single factor or combination of factors mandates a particular result,' and 'the district court should make its determination based on the totality of the circumstances.'" *Lord*, 915 F.3d at 1014 (quoting *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996)); *see Strother*, 977 F.3d at 443; *Landreneau*, 967 F.3d at 449; *Urias-Marrufo*, 744 F.3d at 364; *Brewster*, 137 F.3d at 858.

### III. *Carr* Factor One—Assertion of Innocence

In a conclusory fashion, Daughtry now avers that he is "actually innocent of the allegations." [Clerk's Docket No. 429, at 10]. However, he points to few, if any, specific facts that support any cogent theory of innocence. "A mere assertion of innocence is not sufficient to contradict the defendant's sworn admission of guilt at a plea hearing." *United States v. Wilson*, 719 F. App'x 436, 437 (5th Cir. 2018) ("Mere assertions of innocence without 'a substantial supporting record' are insufficient.") (citing *United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991)); *United States v. Felice*, 272 F. App'x 393, 395 (5th Cir. 2008) (citation omitted); *United States v. Grant*, 117 F.3d 788, 789–90 (5th Cir.

1997) (noting that an assertion of innocence unsupported by specific facts is insufficient, standing alone, to justify allowing a defendant to withdraw a guilty plea); *United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996) ("[Defendant] has asserted his actual innocence, but under *Carr*, this factor is insufficient on its own in the total absence of evidence to support the assertion . . . .") (citation omitted).

Instead, Daughtry turns his attention to the Government's conduct by alleging it "misrepresented its trial burden;" "attempt[ed] to use fabricated evidence and shifting legal theories," "resorted to a self-serving legal fiction where they would not have to prove the required *mens rea*," "created a fictitious strict liability offense with respect to 1,4 Butanediol that defies logic," and committed "document dump tactics [that] served no other purpose except to force a plea under improper circumstances." [Clerk's Docket No. 429, at 10-11].

Daughtry fails to prevail on this *Carr* factor because his focus is entirely pointed at alleged prosecutorial misconduct, not his innocence. To be clear, Daughtry pled guilty to the offense of conspiring to knowingly use the internet to distribute a date rape drug to any person knowing or with reasonable cause to believe the person is not an authorized purchaser. *See* 21 U.S.C. §§ 841(g), 846. At no point in his briefing does Daughtry show or even allege that he did *not* use the internet, that he did *not* distribute a date rape drug,[2] or that he distributed a date rape drug to an *authorized* purchaser, let alone that he did *not* join in a conspiracy to do so.

---

[2] In discussing the third *Carr* factor, Daughtry argues that GHB is not a scheduled I controlled substance because it was subject only to emergency scheduling by the Attorney General that has since expired. [Clerk's Doc. No. 429, at 2]. This argument has been repeatedly rejected as Congress made the determination to list GHB as a Schedule I substance, and any emergency scheduling time limit did not apply. *United States v. Turcotte*, 286 F. Supp. 2d 947, 952 (N.D. Ill. 2003), *aff'd*, 405 F.3d 515 (7th Cir. 2005); *United States v. Berger*, 553 F.3d 1107, 1109 (8th Cir. 2009); Letter from David Satcher, M.D., Ph.D., Assistant Secretary for Health and Surgeon General, to Mr. Donnie R. Marshall, Deputy Administrator, Drug Enforcement Administration (May 19, 1999), Addition of Gamma-Hydroxybutric Acid to Schedule I, 65 Fed. Reg. 13,235-13,238 (Mar. 13, 2000) (to be codified at 21 C.F.R. pt. 1301 and 1308) ("With the issuance of this final order, GHB will be subject to the regulatory controls and administrative, civil and criminal sanctions applicable to the manufacture, distribution, dispensing, importing and exporting of a Schedule I controlled substance with the following one exception [not relevant here]").

Furthermore, this lack of supporting evidence fails to overcome the sworn in-court admissions of his own guilt. "[S]olemn declarations in open court carry a strong presumption of verity." *Strother*, 977 F.3d at 444 (citation omitted). Thus, a defendant's bare assertions of innocence do not outweigh contradicted sworn admissions during a plea hearing and in a factual basis. *United States v. Wiggins*, 674 F. App'x 396, 402 (5th Cir. 2017); *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009); *Gonzalez-Archuleta*, 507 F. App'x 441, 442 ("[Defendant's] unsupported claims that he did not know about the marijuana do not weigh in favor of permitting withdrawal, particularly in light of his sworn in-court admissions to the contrary.").

In connection with his plea proceeding, Daughtry signed a sworn *Factual Basis* in which he admitted to selling 1,4 Butanediol over the internet. [Clerk's Docket No. 357, ¶]]. Additionally, Daughtry and the other conspirators were made aware that some of his customers were using the 1,4 Butanediol for personal consumption and sold them to unauthorized purchasers as Daughtry did not require end user agreements from its customers. [*Id.*, ¶¶f, k]. In the *Factual Basis*, Daughtry agreed it "accurately describe[d] the events and my acts." [Clerk's Doc. No. 357, at 4]. During the plea hearing, Daughtry stated under oath that he fully understood the contents of the *Factual Basis* and agreed without reservation that it accurately described the events and his acts. [Clerk's Doc. No. 430, 17]. At the conclusion, Daughtry admitted he was pleading guilty of his own free will and because he "[was], in fact, guilty." [*Id.* at 18].

Therefore, even though Daughtry now asserts his innocence, the lack of supporting evidence fails to overcome his sworn in-court admissions of guilt. As a result, the court finds that this factor weighs against withdrawal of his guilty plea.

### IV. *Carr* Factors Two, Four, and Seven—Prejudice to the Government, Inconvenience to the Court, and Waste of Judicial Resources

Under the second *Carr* factor, the undersigned considers whether the Government would be prejudiced if Defendant's motion were granted. *Carr*, 740 F.2d at 344. This factor is closely intertwined with factor four—whether the court would be substantially inconvenienced—and factor seven—whether the withdrawal would waste judicial resources. *Id.* Therefore, these factors will be analyzed together. *See United States v. Rodriguez*, No. 3:08-CR-267-D, 2010 WL 286730, at *4 (N.D. Tex. Jan. 22, 2010), *aff'd*, 411 F. App'x 713 (5th Cir. 2011).

The Government asserts that it would be prejudiced if Defendant is permitted to withdraw his guilty plea. [Clerk's Docket Nos. 447 & 467]. Specifically, the Government avers that it will face difficulties regarding the agreed forfeiture in this case because the plea agreement settled on a monetary judgment of $480,683.75. [*Id.* at 15]. In reliance on this agreement, the Government has released *lis pendens* to the real property and non-chemical physical property seized. [*Id.*]. Now, the Government claims it cannot seize the property in the same condition as when it had originally seized it. [*Id.* at 16]. Additionally, the Government argues that several of the plea agreements entered into by Daughtry's co-defendants were offers contingent on Daughtry pleading guilty. [*Id.* at 17]. Further, the Government maintains that it would expend significant time and resources to prepare for trial at this juncture, an assessment with which the Court concurs. [*Id.* at 16].

Moreover, granting Daughtry's motion would inconvenience the Court and waste judicial resources. Rescheduling this case will disrupt the Court's existing docket and expend additional judicial resources for a trial, time that would otherwise be available to protect "the rights of other accused persons awaiting trial, whose cases may lose [] their position on the calendar." *Carr*, 740 F.2d at 346. The Exhibit and Witness Lists prepared by the Government on the eve of trial lists ninety-six separate exhibits and thirty-seven witnesses, at least twenty-three of which are from out-of-state. [Clerk's Docket

Nos. 306, 307]. This trial would easily consume weeks out of the Court's already congested trial calendar.

Daughtry, despite having the burden to show the Court that a withdrawal is justified, did not adequately address any of these factors in his motion. Instead, Daughtry only discusses his *own* alleged prejudice strewn together with allegations of prosecutorial misconduct. [Clerk's Docket No. 429]. Even if prosecutorial misconduct is relevant to any of these *Carr* factors—which it is not—Daughtry's previous counsel attempted to handle these matters through the appropriate legal motions.[3] A *Motion to Withdraw Guilty Plea* is not the proper vehicle to seek redress for alleged Government misconduct. Daughtry's allegations of misconduct and concerns about the strength of the Government's case are all matters that he should have explored prior to pleading guilty.

Therefore, considering that the Government and the Court would be inconvenienced by a withdrawal of Defendant's guilty plea, and that allowing withdrawal would be a waste of judicial resources, *Carr* factors two, four, and seven weigh in favor of denial.

### V. *Carr* Factor Three—Timeliness of Withdrawal Motion

The third *Carr* factor, whether Daughtry delayed in filing the motion to withdraw, weighs heavily against granting the motion. Daughtry has been dilatory in raising the issue of withdrawing his guilty plea. Daughtry pleaded guilty on January 18, 2022, but did not file the instant motion until August 8, 2022, almost seven months after his plea hearing. *See Carr*, 740 F.2d at 345 (characterizing withdrawal motion as untimely when it was filed twenty-two days after defendant's guilty plea); *see also Strother*, 977 F.3d at 444 ("[T]hree months between the entering of a guilty plea and the filing of a motion to withdraw constitutes a significant delay that weighs against granting withdrawal.") (citation omitted);

---

[3] *Joint Emergency Motion for Release of Funds for Counsel* [Clerk's Doc. No. 122]; *Motion to Obtain Transcript of Grand Jury Proceedings* [Clerk's Doc. No. 258]; *Motion to Suppress Evidence* [Clerk's Doc. No. 316]; *Motion to Quash Indictment* [Clerk's Doc. No. 321]; *Motion for Specific Discovery* [Clerk's Doc. No. 329].

*United States v. Walton*, 537 F. App'x 430, 435 (5th Cir. 2013) (affirming court's denial of defendant's motion to withdraw guilty plea where the motion was filed three months after the plea was entered); *United States v. Saucedo-Castanon*, 511 F. App'x 308, 311 (5th Cir. 2013) (affirming district court's denial of defendant's motion to withdraw his guilty plea where he filed the withdrawal motion "nearly three months after pleading guilty—a considerable delay"); *United States v. Shanklin*, 193 F. App'x 384, 386 (5th Cir. 2006) (affirming denial of motion to withdraw guilty plea where defendant admitted under oath that he was guilty and that his plea was knowing and voluntary and did not move until the day of the sentencing hearing—four months after the plea—to request withdrawal).

"With respect to timeliness, '[t]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion.'" *Walton*, 537 F. App'x at 434 (quoting *Carr*, 740 F.2d at 345). Daughtry's only reason for filing the motion so late is that he claims the Supreme Court materially altered "the nature of his plea" on June 27, 2022 when it handed down *Ruan v. United States*, 142 S. Ct. 2370 (2022). [Clerk's Docket No. 429 at 14]. For reasons that will be addressed under the sixth *Carr* factor, *Ruan* has no applicability to the present case. Accordingly, the timeliness *Carr* factor also favors denying the motion.

## VI. *Carr* Factor Five—Close Assistance of Counsel

Daughtry does not contend, nor does the undersigned find anything in the record to indicate, that he has not had close and effective assistance of counsel throughout this proceeding. "Determining whether close assistance of counsel was available under *Carr* 'requires a fact-intensive inquiry.'" *Strother*, 977 F.3d at 445 (quoting *McKnight*, 570 F.3d at 646); *see Urias-Marrufo*, 744 F.3d at 365. Although the Fifth Circuit has not clearly delineated what facts a court should consider when determining whether a defendant received close assistance of counsel, in *McKnight*, the court reviewed Fifth Circuit precedent and indicated that the following facts support a finding that a defendant received close assistance of counsel: (1) counsel negotiating a favorable plea agreement; (2) counsel filing several substantive

motions; (3) counsel filing several motions for continuance; (4) counsel's adherence to the rules of professional responsibility regarding conflicts of interest; (5) counsel engaging in discussions with the defendant regarding his desire to withdraw his guilty plea; (6) counsel acting in accordance with the defendant's instructions; and (7) defendant's statement regarding his satisfaction with his counsel's advice. *See McKnight*, 570 F.3d at 646–47 (citing *United States v. Benavides*, 793 F.2d 612 (5th Cir. 1986)); *Lord*, 915 F.3d at 1015–16; *United States v. Morris*, 85 F. App'x 373, 374 (5th Cir. 2003); *Carr*, 740 F.2d at 348-49. The inquiry, however, is not whether counsel gave correct advice or was able to establish a viable defense, but is "whether counsel provided close assistance by evaluating various factors known to the Court as to the work of defense counsel." *United States v. Portillo*, 3:15-CR-351-M, 2018 WL 1729263, at *3 (N.D. Tex. Apr. 9, 2018) (citing *McKnight*, 570 F.3d at 646–48); *see Lord*, 915 F.3d at 1016; *Urias-Marrufo*, 744 F.3d at 365.

Here, Daughtry has been represented by counsel since the inception of this case. Daughtry's counsel filed multiple motions on Daughtry's behalf and ultimately negotiated a favorable plea agreement for Daughtry. *See Benavides*, 793 F.2d at 618 (rejecting defendant's assertion that he lacked close assistance of counsel and noting defense counsel filed several motions prior to plea hearing). Motions filed on Defendant's behalf prior to the guilty plea included: *Motion for Release of Funds* and a reply supporting that motion, [Clerk's Docket Nos. 122, 136]; multiple motions to continue or extend deadlines, [Clerk's Docket Nos. 130, 252, 253, 260, 299]; *Motion to Modify PreTrial Release Orders*, [Clerk's Docket No. 144]; various motions to seal, [Clerk's Docket Nos. 191, 192, 246, 248, 328, 329]; *Motion to Obtain Transcript of Grand Jury Proceedings*, [Clerk's Docket Nos. 258, 262]; *Motion to Modify Protective Order*, [Clerk's Docket No. 281]; *Motion to Suppress Evidence*, [Clerk's Docket No. 316]; *Motion in Limine*, [Clerk's Docket No. 317]; and a *Motion to Quash Indictment/Information*, [Clerk's Docket No. 321]. Further, during Daughtry's detention hearing, his counsel argued against detention, and ultimately was able to secure his release for over two years. Daughtry's own testimony at the recent hearing on the *Motion to Withdraw*

*Guilty Plea* showed that prior to his guilty plea, he spent multiple hours almost every singe day for two years reviewing the case and discovery materials at his counsel's office. [*See also* Clerk's Docket No 281 at 2, *Motion to Modify Protective Order*]. Importantly, defense counsel secured a favorable plea deal. Had he proceeded to trial, he would have faced eighteen counts on the First Superseding Indictment, some of which carried a minimum sentence of twenty years. [Clerk's Docket No. 205]. As part of the plea agreement, Daughtry only pleaded guilty to Count One of the Information, which carries a maximum sentence of no more than twenty years. [Clerk's Docket No. 347]. All other counts were to be dismissed as a part of the plea agreement.

Finally, Daughtry stated under oath at the plea hearing that he fully discussed the charges, facts of the case and any possible defenses he may have had with his attorney and that he was fully satisfied with the counsel, representation and advice given to him by his former attorney. [Clerk's Doc. No. 430, at 8]. "Reviewing courts give great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). Therefore, the undersigned finds that Daughtry had the benefit of close assistance of counsel throughout the negotiation and entry of his plea. *See McKnight*, 570 F.3d at 647. Accordingly, the fifth *Carr* factor also favors denying the withdrawal.

### VII. *Carr* **Factor Six—Knowing and Voluntary Plea**

Daughtry characterizes his plea as involuntary due to a recent Supreme Court decision and because the Government offered the plea bargain contingent on favorable outcomes for his parents, who were also co-defendants.

The undersigned will start with Daughtry's arguments as they concern the recent *Ruan* decision. *Ruan v. United States*, 142 S. Ct. 2370 (2022). Title 21 U.S.C. § 841(a) makes it a federal crime, "[*e*]*xcept as authorized*[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." *Id.* at 2374; 21 U.S.C. § 841(a) (emphasis added). In *Ruan*, the Supreme Court held that 21 U.S.C. § 841(a)'s "knowing and intentionally" *mens rea* applies to the "except as

-10-

authorized" clause. *Ruan*, 142 S. Ct. at 2382. The defendants in *Ruan* were medical doctors who were licensed to prescribe the drugs at issue. *Id.* at 2375. The Supreme Court ultimately held that once a "defendant meets his burden of production . . . , the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Id.* at 2382. For example, in *Ruan*, that meant proving that the doctors knowingly or intentionally prescribed the drugs for an unauthorized purpose. *See id.*

Daughtry contends that *Ruan* "clarifi[ed] the Government's burden of proof as to the mens *rea* for each element of the alleged offense." [Clerk's Doc. No. 429, at 26]. Daughtry's arguments are immaterial here because he pled guilty to a different offense—conspiring to use the internet to distribute a date rape drug to another person who is not an authorized purchaser. See 21 U.S.C. §§ 846, 841(g). The underlying facts and applicable law in *Ruan* are distinguishable from the present case because § 841(g) specifically outlines the knowledge and intent elements required for the offense charged in the Information. This is dissimilar to the general § 841(a) "except as authorized" provision discussed in *Ruan*. *Compare Ruan*, 142 S. Ct. at 2382, *with* 21 U.S.C. § 841(g). Subsection (g) specifically lists 1, 4 Butanediol as a "date rape drug" and provides a definition for an "authorized purchaser." *Id.* Finally, it outlines the required *mens rea* for "knowingly us[ing] the internet" and "knowing or reasonable cause to believe that . . . the person is not an authorized purchaser." *Id.* Unlike the statutory language in § 841(a), in which it was unclear before *Ruan* whether the knowing and intentional *mens rea* attached to the "except as authorized" clause, each aspect of the "knowing or intentional" requirements are clearly outlined in 21 U.S.C. § 841(g). Here, the defendant acknowledged that he knowingly and intentionally used the Internet to distribute what he knew to be 1,4 Butanediol (specifically listed in the statute as a date rape drug) to individuals he knew were "unauthorized purchasers" as that term is defined in the statute. [Clerk's Docket No. 430]. What is more, at the plea hearing, the undersigned specifically discussed with Daughtry whether he knew he was selling 1,4 Butanediol to [un]authorized purchasers

-11-

as that term is defined in § 841(g):

> THE COURT: All right. Mr. Daughtry, Title 21 United States Code § 841(g) states that -- or prohibits a person from using the internet to distribute a date rape drug to any person knowing or with reasonable cause to believe that the person is not an authorized purchaser. So tell me, what did you do that you're pleading guilty to specifically as far as distributing this to unauthorized purchasers?
>
> THE DEFENDANT: So the buyers that were via the internet who weren't being provided end user agreements that stated their end use and legitimate purpose.
>
> THE COURT: Okay. And that would have made them an authorized purchaser?
>
> THE DEFENDANT: Yes, sir. That's my understanding.
>
> THE COURT: Okay. Now, did your customers provide documentation that had the name, address, and business of the person or entity and provided a legitimate purpose for using any date rape drug for which a prescription is not required? [definition of "authorized purchaser" in 841(g)(1)(B)(iii)]
>
> THE DEFENDANT: No, sir. They provided the name and everything, but not the legitimate purpose.[4]

[Clerk's Docket No. 430 at 17-18]. Thus, *Ruan* has no bearing on this case and Daughtry himself demonstrated at the change of plea hearing that he had the required culpable mental state to find him guilty of offense—conspiring to use the internet to distribute a date rape drug to another person who is not an authorized purchaser.

Further, the undersigned reviewed the elements of the offense with Daughtry at the plea hearing, which contained the requisite scienter requirements, and in response Daughtry confirmed the Government would have to prove those elements beyond a reasonable doubt to convict him of Count One of the Information. [Clerk's Docket No. 430, at 8-9, 20].

Next, Daughtry alleges his plea was involuntary because the Government sought prosecution of his elderly parents and offered them dismissals and agreed to return all of the unlawfully seized

---

[4] At the hearing on this motion, Daughtry's counsel quibbled with the "authorized purchaser" definition because the statute failed to further define what would constitute a "legitimate purpose." That argument is more appropriately raised in a pretrial motion, not a *Motion to Withdraw Guilty Plea*. Nevertheless, any vagueness challenge to what constitutes a "legitimate purpose" is moot because Daughtry admitted that customers did not provide *any* legitimate purpose for their purchase. [Clerk's Doc. No. 430, at 18].

property if he would enter a plea of guilty. [Clerk's Doc. No. 429, at 24].[5]

Defendants do not have the right to plea bargain individually, and the Government is not prohibited from conditioning a plea offer on a joint plea. *United States v. Rice*, 607 F.3d 133, 144 (5th Cir. 2010). It is also not prosecutorial misconduct to offer a joint plea. *Id.* Daughtry's claim that his plea is involuntary is also belied by his testimony at the plea hearing. He stated that there were no promises outside the plea agreement to get him to plead guilty or accept the plea agreement. [Clerk's Docket No. 430, at 13]. He further agreed that no one forced him, threatened him or coerced him in any sort of way to get him to plea guilty or accept the plea agreement. [*Id.*]. He stated he was pleading guilty knowingly, freely, voluntarily, and with the advice of counsel. [*Id.* at 18]. Lastly, he was pleading guilty of his own free will and because he was, in fact, guilty. [*Id.*].

Therefore, Daughtry fails to show that his plea was not knowingly and voluntarily entered, as required by *Carr*. 740 F.2d at 350; *see also United States v. Martinez*, 344 F. App'x 975, 976 (5th Cir. 2009). Accordingly, the undersigned finds that Daughtry entered his plea of guilty knowingly and voluntarily, and this factor also weighs against withdrawal.

## VIII. Conclusion

An analysis of all of the *Carr* factors indicates that Daughtry has not shown a fair and just reason to withdraw his guilty plea, and the undersigned finds that withdrawal is unwarranted under the circumstances. Under the totality of the circumstances, the *Carr* factors weigh strongly against permitting the withdrawal of Daughtry's guilty plea in this case. Accordingly, Daughtry's *Motion to Withdraw Guilty Plea*, [Clerk's Docket No. 429], should be **DENIED.**

---

[5] In reality, the Government dismissed its case against his mother but agreed to an 11(c)(1)(C) Plea Agreement with his father for probation. [Clerk's Doc. Nos. 353, 377].

### IX. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) (Supp. IV 2011), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report; and (4) be no more than eight pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

SIGNED this 27th day of September, 2022.

_____
Zack Hawthorn
United States Magistrate Judge